# DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

| | | |
|---|---|---|
| BANK OF ST. CROIX, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 2014-0075 |
| | ) | |
| BAY ESTATES GROUP LIMITED LIABILITY | ) | |
| LIMITED PARTNERSHIP; AGDH MANAGEMENT, | ) | |
| LLC; MARY B. WILSON, TRUSTEE OF THE | ) | |
| MARY B. WILSON LIVING TRUST A/K/A THE | ) | |
| MARY B. WILSON 2002 REVOCABLE LIVING | ) | |
| TRUST DATED JANUARY 28, 2002; ARTHUR J. | ) | |
| FARO; EILEEN A. CASSIDY; NICHOLAS | ) | |
| SAAKVITNE, TRUSTEE, INDEPENDENT | ) | |
| FIDUCIARY AND PLAN ADMINISTRATOR OF | ) | |
| THE ERG RETIREMENT TRUST AND THE | ) | |
| ENERGY, RESEARCH AND GENERATION | ) | |
| PROFIT SHARING PLAN; EVELYN C. | ) | |
| HERMSMEIER, ERIC B. BENSON, BRADLEY D. | ) | |
| BENSON AND MARK BENSON, AS CO-TRUSTEES | ) | |
| OF THE BENSON VIRGIN ISLANDS FAMILY | ) | |
| HERITAGE TRUST (BVI TRUST) a U.S. VIRGIN | ) | |
| ISLANDS TRUST FORMED UNDER A WRITTEN | ) | |
| AGREEMENT DATED JUNE 3, 2003 and ALL | ) | |
| CO-TRUSTEES AND SUCCESSOR CO-TRUSTEES | ) | |
| OF THE BENSON VIRGIN ISLANDS FAMILY | ) | |
| HERITAGE TRUST (BVI TRUST) a U.S. VIRGIN | ) | |
| ISLANDS TRUST FORMED UNDER A WRITTEN | ) | |
| AGREEMENT DATED JUNE 3, 2003, UNITED | ) | |
| STATES OF AMERICA, and ANDREW TURNER, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**Attorneys:**
**Gerald T. Groner, Esq.,**
St. Croix, U.S.V.I.,
    *For Plaintiff*

**Bernard C. Pattie, Esq.,**
St. Croix, U.S.V.I.,
    *For Defendants Mary B. Wilson,*
    *Arthur J. Faro, and Eileen A. Cassidy*

**J. Daryl Dodson, Esq.**
St. Thomas, U.S.V.I.,
*For Defendant Nicholas Saakvitne, Trustee*

**Scot F. McChain, Esq.,**
St. Croix, U.S.V.I.
*For Defendant Andrew Turner*

**Angela Tyson-Floyd, Esq.,**
St. Croix, U.S.V.I.
*For Defendant United States of America*

## MEMORANDUM OPINION

**Lewis, Chief Judge**

THIS MATTER comes before the Court on the "Motion for Default Judgment, Summary Judgment and for an Award of Costs and Fees" (Dkt. No. 103) filed by Plaintiff Bank of St. Croix ("Bank" or "Plaintiff"), a Division of United Fidelity Bank FSB. Plaintiff seeks a default judgment against Defendants Bay Estates Group Limited Liability Limited Partnership ("Bay Estates"), and Evelyn C. Hermsmeier, Eric B. Benson, Bradley D. Benson, and Mark Benson, as Co-Trustees of the Benson Virgin Islands Family Heritage Trust ("BVI Trust") and any Successor Trustees of the BVI Trust. *Id.* at 1. The Clerk of Court has entered Default against these parties ("Defaulting Defendants") for failing to file Answers to the Complaint or Amended Complaints after being properly served. (Dkt. Nos. 37, 90, 91, 98).

Defendants Mary B. Wilson, Trustee of the Mary B. Wilson Living Trust, Arthur J. Faro, Eileen A. Cassidy, and Nicholas Saakvitne, Trustee, Independent Fiduciary and Plan Administrator of the ERG Retirement Trust and the Energy, Research and Generation Profit Sharing Plan, all filed Answers to the Complaint ("Answering Defendants") claiming subordinate interests in the underlying mortgaged property. (Dkt. Nos. 13, 17). Plaintiff seeks summary judgment and foreclosure of its first priority lien against these Defendants. (Dkt. No. 105 at 5-7).

None of the Answering Defendants filed responses to the Bank's Motion for Default and Summary Judgment.

## I. BACKGROUND

On August 21, 2014, the Bank filed a Complaint in the Superior Court of the Virgin Islands against Bay Estates and various other defendants—including the United States of America—for a debt owed and to foreclose a real property mortgage. (Dkt. No. 1-2 at 3). The United States timely removed the action to this Court. (Dkt. No. 1). Shortly after the case was removed, the Bank filed an Amended Complaint. (Dkt. No. 10).

In the Amended Complaint, the Bank alleges that on October 8, 2003, Bay Estates, through its General Partner AGDH Management, LLC ("AGDH"), executed and delivered to the Bank a variable rate promissory note for $1,500,000.00 ("Note"), as well as a Mortgage and other security documents. *Id.* at ¶¶ 13-14. Bay Estates' performance under the Note and Mortgage was guaranteed by Andrew Turner. *Id.* at ¶ 16. The Mortgage was recorded on October 8, 2003 with the St. Croix Recorder of Deeds (the "St. Croix Recorder"). *Id.* at ¶ 14.

The Bank further alleges that Bay Estates had granted it a First Priority Mortgage regarding certain property on St. Croix described as:

> Plot 26, Plot 28 and Plot 29 (consisting of 9.1596 U.S. acres, 11.2993 U.S. acres and 0.6599 U.S. acres, respectively) all of Estate Prosperity, Northside Quarter "B", as more fully shown on OLG Drawing No. 4193-K, dated May 19, 1988.

*Id.* at ¶ 15. According to the Bank, the mortgaged property had been subdivided and various parcels were sold and released from the Mortgage lien. The Bank asserts that the following real property remains subject to the Mortgage lien and is described as:

> Plots 26-C (Beach Access)(0.389 U.S. acres), Plot 26-2 (0.987 U.S. acres) and Plot 26-3 (0.989 U.S. acres) all of Estate Prosperity, Northside Quarter "B", St. Croix, U.S. Virgin Islands, as more fully shown on OLG Drawing No. 5544 dated April 23, 2004; and

Road Plot 26-D (1.966 U.S. acres), Plot 26-4 (0.995 U.S. acres), Rem. Plot 28 (5.135 U.S. acres), Plot 28-1 (0.953 U.S. acres), Plot 28-2 (0.996 U.S. acres), Plot 28-3 (0.889 U.S. acres), Plot 28-4 (1.044 U.S. acres), Plot 28-5 (0.848 U.S. acres), Plot 28-6 (0.909 U.S. acres) and Rem. Plot 29 (0.282 U.S. acres) all of Estate Prosperity, Northside Quarter "B", as more fully shown on OLG Drawing No. 5571, dated July 30, 2004.

("the Property"). *Id.* at ¶ 15.

The Bank was not the sole source of funding for Bay Estates. The Bank alleges that, on October 1, 2003, Bay Estates executed a $500,000 promissory note to two separate trusts (the "Rudd-Wilson Note"). Under this Note, Bay Estates promised to pay $200,000 to Rick Rudd and Paula Rudd as Trustees of the Rick J. Rudd and Paula T. Rudd 2003 Living Trust dated January 21, 2003 ("Rudd Trust") and to pay $300,000 to defendant Mary Wilson, Trustee of the Mary B. Wilson Living Trust a/k/a Mary B. Wilson 2002 Revocable Living Trust dated January 28, 2002 ("Wilson Trust"). *Id.* at ¶ 17. To secure that Note, Bay Estates granted a Second Priority Mortgage to the Rudd and Wilson Trusts. *Id.* at ¶¶ 17-18. The Second Priority Mortgage was recorded on May 6, 2004 against the following real property in St. Croix, U.S. Virgin Islands:

Plot 26, Plot 28 and Plot 29 (consisting of 9.1596 U.S. acres, 11.2993 U.S. acres and 0.6599 U.S. acres, respectively) all of Estate Prosperity, Northside Quarter "B", as more fully shown in OLG Drawing No. 4193-K, dated May 19, 1988.

*Id.* at ¶ 18. Several years later, the Rudd Trust conveyed its interest in the Note to Arthur J. Faro and Eileen A. Cassidy. The Rudd Trust also assigned its interest in the Rudd-Wilson mortgage to Faro and Cassidy. That Assignment was recorded with the St. Croix Recorder on December 28, 2006. *Id.* at ¶¶ 19-20.

In February 2007, Bay Estates executed another mortgage with James River Development Company, LLC ("James River Mortgage") to restructure a prior debt with a balance of $3,000,000. *Id.* at ¶ 22. The James River Mortgage covered property subject to the Bank's mortgage and

additional real property on St. Croix. *Id.* This mortgage was recorded with the St. Croix Recorder on May 31, 2007. *Id.* at ¶ 22. The James River Mortgage and the related debt was later assigned to Burton O. Benson, as the (then) Trustee of the ERG Retirement Trust and the Administrator of the Energy, Research and Generation Profit Sharing Plan. That assignment was filed with the St. Croix Recorder on September 24, 2010. (Dkt. No. 10 at ¶ 23).[1]

The Bank also alleges that in March 2007, Bay Estates executed a mortgage to the Co-Trustees of The Benson Virgin Islands Family Heritage Trust ("BVI Trust") to secure a $4,500,000 debt. This mortgage—which included, *inter alia*, the property covered under the Bank's mortgage—was recorded with the St. Croix Recorder on May 31, 2007. The BVI Trust Mortgage was, by its terms, subordinate to the James River Mortgage. *Id.* at ¶ 25.

In August 2013, the United States of America filed a Lis Pendens with an attached Superseding Indictment against most of Bay Estates' mortgaged property and other property located on St. Croix. The Government seeks forfeiture of most of the Property based on charges brought against Burton O. Benson and Eric B. Benson on various alleged ERISA-related fraud claims. *Id.* at ¶ 27. (Dkt. No. 1-8, Exh. 12).

The Bank and Bay Estates agreed to modify the Loan and Note in a June 14, 2012 Letter Agreement. The loan modification included changing the loan's variable interest rate to a fixed interest rate of 4.75%. *Id.* at ¶¶ 29, 33 (Dkt. No. 1-8, Exh. 13). The Bank asserts that Bay Estate defaulted on its obligations to the Bank under the Note and Mortgage as modified by the Letter Agreement. *Id.* at ¶ 30. On March 24, 2014, the Bank gave Bay Estates, AGDH and the guarantor, Andrew Turner, Notice of Nonpayment informing them that they were in breach of the Note and

---

[1] At some point, defendant Nicholas Saakvitne was named as the Trustee and Independent Fiduciary of the ERG Retirement Trust and the Administrator of the Energy, Research and Generation Profit Sharing Plan.

Mortgage and that the non-payments had to be cured. *Id.* at ¶ 31. Bay Estates and its guarantor failed to cure the default, and on May 23, 2014, the Bank sent those parties Notice of Default and Acceleration declaring that the balance of the loan was immediately due and payable. *Id.* at ¶¶ 32-33. Under the terms of the Letter Agreement, the interest rate after an acceleration began to accrue at the Wall Street Journal Prime Rate plus 4.0%. *Id.* at ¶¶ 33-34 (Dkt. No. 1-8, Exh. 13).

In its Amended Complaint, the Bank alleges that Bay Estates and its guarantor owes the Bank an unpaid principal in the amount of $809,617.26 as of June 11, 2013, and accrued interest in the amount of $45,831.60 from June 12, 2013 through August 20, 2014. In addition, the Bank asserted that interest was accruing at the rate of 7.25% per annum or $160.82 per diem from August 21, 2014. *Id.* at ¶ 35. In later filings, the Bank reported that the Wall Street Journal prime rate had increased, thereby raising the loan's interest rate to 7.5% on and after December 17, 2015 for a per diem rate of $166.36 until the date of judgment. (Dkt No. 104-1 at 6-7).

The Bank requested that the Court enter judgment in its favor and against Bay Estates, AGDH and Andrew Turner, jointly and severally, in the principal amount stated above, plus accrued interest and ongoing interest; that the Bank's mortgage foreclose the interest of all other lienholders; and that the property be sold at a public auction with any proceeds to be applied to the sums due to the Bank, and surplus funds, if any, to be distributed by further Order of the Court. (Dkt. No. 10 at 9-12).

Upon the removal of the action to this Court, summonses were issued to the named defendants. Answers were filed by the United States of America (Dkt. No. 11), Nicholas Saakvitne (Dkt. No. 13), and Eileen Cassidy, Arthur Faro and the Wilson Trust. (Dkt. No. 17). None of the

other parties filed an Answer and the Bank requested that default be entered against them.[2] On September 21, 2015, the Clerk entered default against Bay Estates and Evelyn Hermsmeier as Co-Trustee of the BVI Trust. (Dkt. No. 37).

The Bank then discovered that the BVI Trust had Successor Trustees and filed a Second Amended Complaint identifying these additional parties. (Dkt. No. 71 at 2-3). Summonses were issued to Eric Benson and Bradley D. Benson as Co-Trustees. When service was unsuccessful, the Bank obtained approval from the Magistrate Judge to make service on them by publication. (Dkt. Nos. 72-73). Thereafter, the Bank filed a Third Amended Complaint (Dkt. No. 79) naming Mark Benson as another Co-Trustee of the BVI Trust and also adding "All Co-Trustees and Successor Co-Trustees of the BVI Trust." *Id.* at ¶¶ 9-10. Mark Benson was personally served with process while the unnamed Co-Trustees and Successor Trustees were served by publication. (Dkt. No.84, 92). When the Bensons and other Co-Trustees or Successor Trustees failed to answer the Third Amended Complaint, the Clerk entered default against Eric, Bradley and Mark Benson as Co-Trustees and all Co-Trustees or Successor Trustees of the BVI Trust. (Dkt. Nos. 90, 91, 97, 98).

After achieving service against all Defendants, the Bank filed the instant Motion for Default Judgment and Summary Judgment with an accompanying Statement of Undisputed Facts and Memorandum in Support. (Dkt. Nos. 103-105). In its Motion, the Bank also requests an award of costs and attorneys' fees. (Dkt. Nos. 103, 105 at 10-11). No party responded to the Bank's Motion.

With its Motion, the Bank attached an Affidavit of Indebtedness (Dkt. No. 104-1). The Affidavit reflects that as of April 10, 2017, Bay Estates owed an unpaid principal balance of

---

[2] Prior to the entry of default, the Bank voluntarily dismissed its claims against guarantor Andrew Turner (Dkt. Nos. 30, 35) and AGDH Management LLC without prejudice. (Dkt. No. 31). The Bank later filed a Stipulation of Dismissal as to the United States Government. (Dkt. No. 36, 39).

$809,617.26 and unpaid accrued interest of $170,551.97.[3] In a supplemental Affidavit submitted upon Order of the Court, the Bank detailed the changes in the variable interest rate between June 1, 2014 and September 30, 2019. (Dkt. No. 110-1). In that supplemental Affidavit, the Bank asserts that the accrued interest under applicable variable rates totals $386,632.49 from June 1, 2014 through September 30, 2019, for a total indebtedness of $1,196,249.75. *Id.* According to the Affidavit, the per diem interest rate, as of September 30, 2019, is $199.63. *Id.* at ¶ 14. The Court takes judicial notice that the Wall Street Prime Rate decreased to 4.75% on October 31, 2019, making the per diem interest rate after that date $194.09. More recently, the Prime Rate dropped to 4.25% on March 4, 2020 (resulting in a per diem interest rate of $183.00), and dropped again on March 16, 2020 to 3.25% (resulting in a per diem interest rate of $160.81).[4]

The Bank argues that the procedural elements for default judgment have been satisfied because: the Defendants were properly served with copies of the Summons and Complaint; the Clerk entered default against them; and they are not infants or incompetent persons, nor in the military service. (Dkt. No. 105 at 18-19). The Bank further contends that the filings in this action provide a sufficient basis for entry of default judgment on the merits of its claims, as the documentation shows that Bay Estates' General Partner executed the Note and Mortgage on Bay Estates' behalf, and that Bay Estates is in default under the Note and Mortgage. The Bank further

---

[3] Once a default was declared, the interest rate on the Note reverted to a variable rate of 4.0% over the Wall Street Journal Prime Rate. Thus from May 29, 2015, interest accrued at varying rates based upon periodic changes in the Wall Street Prime Interest Rate. (Dkt. No. 104-1 at 6).

[4] *See* JP Morgan Chase & Co., Historical Prime Rate, https://www.jpmorganchase.com/ corporate/About-JPMC/historical-prime-rate.htm (last visited April 6, 2020); HSH, Prime Rate– Current Values and History Covering 2010-Present, https://www.hsh.com/indices/prime-rate.html (last visited April 6, 2020).

asserts that it has demonstrated it is entitled to default judgment under the factors set forth in *Chamberlain v. Giampapa*, 210 F.3d 154 (3d Cir. 2000). *Id.* at 19.

The Bank similarly argues that it is entitled to summary judgment against the Answering Defendants, who were all junior lienholders. The Bank maintains that its Statement of Undisputed Facts establishes the timing of the other lienholders' filings and that the Bank's Mortgage has priority over all other liens. Thus, the Bank asserts that it is entitled to summary judgment against these Defendants. (Dkt. No. 105 at 5-8). None of the other lienholders have contested the Bank's claim to first priority.

Finally, the Bank claims that it is entitled to an award of costs and attorneys' fees incurred in pursuing this action. *Id.* at 10-11. In support of this claim, Plaintiff filed a Declaration of Counsel in which Gerald T. Groner, Esq. avers that he spent 75.45 hours pursuing this case on behalf of the Bank and that he charged an hourly rate of $390 for a total of $29,425.50 in attorneys' fees. (Dkt. No. 104-18 at 2, 5) Attorney Groner also avers that he incurred $4,098.69 in costs, including filing fees, process servers' charges, expenses for the publication of summonses, and costs for military service certificates. *Id.* at 5-6. The Bank also attached the affidavits of two other attorneys asserting that the range of hourly rates charged by attorneys on St. Croix for commercial litigation—including multiparty foreclosure proceedings—ranges from $300 to $450 per hour. (Dkt. No. 104-19, 104-20).

## II.    APPLICABLE LEGAL PRINCIPLES

### A.    Default Judgment

When considering a motion for default judgment, the Court accepts as true any facts contained in the pleadings regarding liability. Fed. R. Civ. P. 8(b)(6). Legal conclusions, however,

are not deemed admitted, nor is the extent or amount of damages claimed by a party. *See Star Pacific Corp. v. Star Atl. Corp.,* 574 F. App'x 225, 231 (3d Cir. 2014); *Service Employees Int'l Union Local 32BJ v. ShamrockClean, Inc.,* 325 F. Supp. 3d 631, 635 (E.D. Pa. 2018); Fed. R. Civ. P. 8(b)(6). Parties are not entitled to an entry of default judgment as of right; instead, the matter is addressed to the sound discretion of the court. *Pieczenik v. Comm'r New Jersey Dept. of Envir. Protection*, 715 F. App'x 205, 208-09 (3d Cir. 2017); *Catanzaro v. Fischer*, 570 F. App'x 162, 165 (3d Cir. 2014).

An application for entry of default judgment must contain evidence, by affidavits and/or documents, of the following:

> (1) the entry of default pursuant to Rule 55(a); (2) the absence of any appearance by any party to be defaulted; (3) that the defendant is neither an infant nor an incompetent [person]; (4) that the defendant has been validly served with all pleadings; (5) the amount of [the] judgment and how it was calculated; (6) and an affidavit of non-military service in compliance with the [Servicemember's] Civil Relief Act.

*Bank of Nova Scotia v. Tutein*, 2019 WL 2656128 at *3 (D.V.I. June 27, 2019)*; see also* Fed. R. Civ. P. 55(b); *Ditech Financial LLC v. Felice,* 2018 WL 1771558, at *2 (D.V.I. Apr. 12, 2018). Additionally, the Court must assess three factors when determining whether a default judgment is appropriate: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to [defendant's] culpable conduct." *J&J Sports Productions, Inc. v. Ramsey*, 757 F. App'x 93, 95 n.1 (3d Cir. 2018) (citing *Chamberlain v. Giampapa*, 210 F.3d at 164).

### B.    Summary Judgment

The Bank seeks summary judgment against the Defendants who filed Answers—all junior lienholders of the Property. None of the Defendants responded to the Motion.

To prevail on a motion for summary judgment, a movant must show that there is "no genuine dispute as to any material fact," and that, based on the undisputed facts, it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Stone v. Troy Construction, LLC,* 935 F.3d 141, 147 n.6 (3d Cir. 2019); *Goldenstein v. Repossessors Inc.*, 815 F.3d 142, 146 (3d Cir. 2016) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). In reviewing a summary judgment motion, the district court is required to view all facts "in the light most favorable to the non-moving party, and draw all reasonable inferences in that party's favor." *Curto v. A Country Place Condominium Ass'n,, Inc.*, 921 F.3d 405, 409 (3d Cir. 2019) (citations omitted). The role of the court is to "determine whether there is a genuine issue for trial." *Stiegel v. Peters Twp*., 600 F. App'x. 60, 63 (3d Cir. 2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (internal quotation marks omitted)). A genuine issue of material fact exists when the fact-finder, viewing the record evidence, could rationally find in favor of the non-moving party. See *Pearson v. Prison Health Service*, 850 F.3d 526, 534 (3d Cir. 2017).

Pursuant to Rule 56(e), a non-moving party is required to establish facts which show the existence of a genuine issue for trial. This does not mean, however, "that a moving party is automatically entitled to summary judgment if the opposing party does not respond." Rather, "[i]f the adverse party does not [] respond, summary judgment, *if appropriate*, shall be entered against the adverse party." *Anchorage Associates v. Virgin Islands Bd. of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990) (internal quotations and citations omitted).

## III.    DISCUSSION

To succeed in a debt and foreclosure action, the plaintiff must prove three elements: (1) the debtor executed a promissory note and mortgage; (2) the debtor is in default under the terms of the note and mortgage; and (3) the lender is authorized to foreclose on the property mortgaged as security for the note. *Brouillard v. DLJ Mortg. Capital, Inc.*, 63 V.I. 788, 793 (2015); *see also Anthony v. FirstBank Virgin Islands*, 58 V.I. 224, 229 (V.I. 2013); 55 AM. JUR. 2D Mortgages § 604 (2019) (foreclosure requires a valid mortgage, default on part of mortgagor, and foreclosure in compliance with terms of contract).

### A.    Default Judgment Analysis

As noted above, when considering a Motion for Default Judgment, the Court accepts as true any facts contained in the pleadings regarding liability. Fed. R. Civ. P. 8(b)(6). In the Third Amended Complaint, the Bank asserts that it is the owner and holder of the Note and Mortgage; that Bay Estates, through its General Partner, executed the Loan and Mortgage dated October 8, 2003 and subsequent Letter Agreement dated June 14, 2012; and that Bay Estates is in default under the terms of the Note and Mortgage, as amended. (Dkt. No. 79 at ¶¶ 3, 11, 13, 26, 27). Accepting the factual allegations as true, in light of the accompanying documentation confirming the terms of the Note and Mortgage, the Bank has established, for purposes of default judgment, the merits of its claim.

In addition to establishing the elements of its claim, the Bank also must satisfy the additional requirements necessary to obtain a default judgment against Bay Estates and Evelyn Hermsmeier, Eric B. Benson, Bradley D. Benson, Mark Benson and any other Co-Trustee or Successor Co-Trustee of the BVI Trust. The Bank has established that the Clerk of Court has entered default against these Defendants and that they have not appeared to defend against the

Bank's claims. In addition, Christiana Williams, Community President of the Bank, has averred in her affidavit that Evelyn C. Hermsmeier, Eric B. Benson, Mark Benson and Bradley D. Benson are adults and, based upon information and belief, they are not incompetent. Such an affidavit is sufficient to establish age and competency. *See FirstBank Puerto Rico v. Jaymo Properties, LLC,* 379 F. App'x 166, 170 (3d Cir. 2010) (bank attorney's affidavit stating in good faith that defendant was a competent adult is sufficient to find that a non-appearing defendant is not a minor or incompetent person for the purpose of obtaining a default judgment); *Bank of Nova Scotia v. Robinson,* 2018 WL 1513269, at *3 (D.V.I. March 27, 2018) (same). In addition, the record reflects Defendants were validly served with process, either personally or by publication. (Dkt. Nos. 15, 16, 74, 75, 89, 92).

Together with its Second Motion for Default Judgment, the Bank provided copies of Military Status Reports from the Department of Defense Manpower Data Center showing that Evelyn C. Hermsmeier, Eric B. Benson and Mark Benson are not in the military service as defined in the Servicemember's Civil Relief Act, 50 U.S.C. § 3931 [formerly 50 App. U.S.C. § 526(a)] (Dkt. No. 104-17). In response to this Court's Order, the Bank thereafter filed a Military Status Report establishing that Co-Trustee Bradley D. Benson also is not in the military. (Dkt. Nos. 112, 113).

The Bank must also show with specificity how it calculated the amount of the judgment. (Dkt. Nos. 104-1 at 5-7; 104-16). In reviewing the supplemental Affidavit, the Court concludes, based on information from publicly reliable sources, that there is one error regarding the accrued interest rate calculations which reduces the accumulated accrued interest through September 30,

2019 from $386,632.49 claimed by the Bank to $348,976.14.[5] In addition, other changes in the Wall Street Journal Prime Rate occurred on October 31, 2019, March 4, 2020 and March 16, 2020—after the Updated Affidavit was filed—which impacts the current accruing per diem interest rate.[6] As a result, the Court's calculations of the indebtedness vary somewhat from that presented by the Bank.

---

[5] The Bank's calculations have the Wall Street Prime interest rate increasing from 4.50% to 5.00% on March 22, 2018. The Court's review of public records, however, has determined that the rate increased on that date to 4.75% and increased to 5.00% on June 14, 2018. Accordingly, the Court's corrected calculations, bringing the total up to the same date as the Affidavit, is as follows:

| Begin Date | End Date | No. Days | WSJ Prime | Loan Int. | Per Diem | Int Accrued |
|---|---|---|---|---|---|---|
| 6/1/2014 | 12/16/2015 | 564 | 3.25 | 7.25 | $ 160.81 | $ 90,696.84 |
| 12/17/2015 | 12/14/2016 | 364 | 3.50 | 7.50 | $ 166.36 | $ 60,555.04 |
| 12/15/2016 | 3/15/2017 | 91 | 3.75 | 7.75 | $ 171.90 | $ 15,642.90 |
| 3/16/2017 | 6/14/2017 | 91 | 4.00 | 8.00 | $ 177.45 | $ 16,147.95 |
| 6/15/2017 | 12/13/2017 | 182 | 4.25 | 8.25 | $ 183.00 | $ 33,306.00 |
| 12/14/2017 | 3/21/2018 | 98 | 4.50 | 8.50 | $ 188.54 | $ 18,476.92 |
| 3/22/2018 | 6/13/2018 | 84 | 4.75 | 8.75 | $ 194.09 | $ 16,303.56 |
| 6/14/2018 | 9/26/2018 | 105 | 5.00 | 9.00 | $ 199.63 | $ 20,961.15 |
| 9/27/2018 | 12/19/2018 | 84 | 5.25 | 9.25 | $ 205.18 | $ 17,235.12 |
| 12/20/2018 | 7/31/2019 | 224 | 5.50 | 9.50 | $ 210.72 | $ 47,201.28 |
| 8/1/2019 | 9/18/2019 | 49 | 5.25 | 9.25 | $ 205.18 | $ 10,053.82 |
| 9/19/2019 | 9/30/2019 | 12 | 5.00 | 9.00 | $ 199.63 | $ 2,395.56 |
| **TOTALS:** | | **1948** | | | | **$ 348,976.14** |

[6] Beginning on March 16, 2020 to the present date, the Wall Street Prime interest rate has been 3.25%, causing interest on the Note on and after that date to accrue at 7.25% or $160.81 per diem. The interest calculations from and after September 30, 2019 would be as follows:

| Begin Date | End Date | No. Days | WSJ Prime | Loan Int. | Per Diem | Int Accrued |
|---|---|---|---|---|---|---|
| 10/1/2019 | 10/30/2019 | 30 | 5.00 | 9.00 | $ 199.63 | $ 5,988.90 |
| 10/31/2019 | 3/3/2020 | 125 | 4.75 | 8.75 | $ 194.09 | $ 24,261.25 |
| 3/4/2020 | 3/15/2020 | 12 | 4.25 | 8.25 | $ 183.00 | $ 2,196.00 |
| 3/16/2020 | 4/6/2020 | 22 | 3.25 | 7.25 | $ 160.81 | $ 3,537.82 |
| **TOTALS:** | | **182** | | | | **$ 35,983.97** |

Finally, the Court has considered the *Chamberlain* factors and finds that the prejudice to the Bank resulting from Bay Estate's breach of its contractual obligations, together with the apparent absence of a litigable defense, weighs in favor of the Court granting default judgment. In addition, Defendants' default was a result of their culpable conduct as evidenced by their refusal to respond to the Complaint or any of the Amended Complaints. *See World Ent'mt Inc. v. Brown*, 487 F. App'x 758, 762 (3d Cir. 2012) (finding that defendant engaged in culpable conduct by, *inter alia*, failing to respond to complaint because such failure showed a willful disregard for plaintiff's legal communications); *Cohen v. Gabriel Enters., Inc.*, 2013 WL 1154847, at *5 (D.V.I. Mar. 21, 2013) (citing cases finding culpable conduct where defendants failed to answer complaint).

In view of the foregoing, the Bank has established that default judgment is appropriate against defaulting Defendants Bay Estates, and Evelyn C. Hermsmeier, Eric B. Benson, Bradley D. Benson and Mark Benson, as Co-Trustees of the BVI Trust and any Successor Trustees of the BVI Trust.

### B. Summary Judgment Analysis

"Generally, debt actions are well suited for summary judgment. Because of the relative simplicity of the issues involved, suits to enforce promissory notes are among the most suitable classes of cases for summary judgment." *Flagstar Bank, FSB v. Lyles*, 2017 WL 987448, at *3 (D.V.I. March 14, 2017) (internal quotation marks and citations omitted). In the instant case, the Bank's Undisputed Facts establish all the elements required to prevail in a debt and foreclosure action. First, the Bank has established by Affidavit and documents the existence of the debt of Bay Estates and its guarantors to the Bank as reflected in the Note and Mortgage; that Bay Estates defaulted on the Note and Mortgage; that the Bank gave Notice of Default to Bay Estates and Bay

Estates failed to cure that default; that as a result of the default, the Bank accelerated the balance of the Note and demanded full payment of the same; and that the Note and Mortgage remain unpaid. (Dkt. No. 104 at ¶¶ 9, 12, 21-28.) The Bank has also proved the amount of the indebtedness due under the Note subject to the Court's adjustments in the accrued interest as noted above. *Id.* at ¶¶ 27-29; 110.

Where there is no dispute that the mortgagor has failed to pay its obligations under the mortgage and the recorded mortgage is in a specific amount, then summary judgment is appropriate. *See U.S. Bank Nat'l Assn v. Chetty Limited Partnership*, 2018 WL 4300949, at *4 (E.D. Pa. Sept. 10, 2018) (entry of summary judgment is proper when debtor admits it has failed to pay the debt, and the recorded mortgage is in a specified amount); *Wilson v. Parisi*, 549 F. Supp. 2d 637, 655 (M.D. Pa. 2008) (same). Here, the Bank has shown that Bay Estates is in default on its Note and Mortgage obligations; it has been given a reasonable opportunity to cure; and it has failed to do so. The Bank has also established the specific amount of the mortgage.

None of the Answering defendants—Trustee Mary B. Wilson, Arthur J. Faro, Eileen Cassidy and Trustee Nicholas Saakvitne—have responded to the Bank's Motion for Summary Judgment. As a result, the Bank's Statement of Undisputed Facts is deemed admitted. LRCi 56.1(b). The Undisputed Facts establish that the Answering Defendants possessed liens against the property of Bay Estate, but all of those liens against the Property were junior to the Bank's lien. (Dkt. No. 104 at ¶¶ 10, 14, 16, 18). The Virgin Islands is a race notice jurisdiction. *Brodhurst v. Frazier*, 57 V.I. 123, 130-31 (2012); 28 V.I.C. § 124. A race-notice statute is defined as a "recording law providing that the person who records first, without notice of prior unrecorded claims, has priority." BLACK'S LAW DICTIONARY at 1448 (10th ed. 2014); *see Chase Manhattan Bank, N.A. v. Miller*, 39 V.I. 123, 130-31 (V.I. Terr. Ct. 1998) (stating that 28 V.I.C. § 124, applies

"when one party records a mortgage lien without notice of a previous unrecorded lien.") Because all the Answering Defendants' liens were recorded after the Bank's Mortgage, their liens are subordinate to the Bank's lien. Accordingly, the Bank is entitled to summary judgment on its claim that its lien has priority over those of the Answering Defendants.

C.    **Attorneys' Fees and Costs**

Finally, the Bank requests an award of attorneys' fees as provided under the terms of the Note and Mortgage. (Dkt. No. 105 at 20-21). The Bank requests reimbursement for the services of Attorney Groner for working 75.45 hours in this case at a rate of $390 per hour for a total of $29,425.50. Additionally, the Bank requests reimbursement for expenses incurred by Attorney Groner's firm totaling $4,098.69. (Dkt. No. 104-18). Attorney Groner has been licensed to practice law in the Virgin Islands since 1981.

In seeking recovery of its attorneys' fees and costs, the Bank argues that the Mortgage does not limit the Bank's recovery to "reasonable" costs and expenses, and that because Bay Estates is a "sophisticated commercial entity," it should be held to the agreement. The Bank apparently is referring to paragraph 16.3 of the Mortgage, which provides that upon default, Bay Estates "shall pay on demand all costs and expenses (including, without limitation, attorneys' fees and expenses) incurred by or on behalf of the Lender" in enforcing the Mortgage or Note. (Dkt. 104-4, at 7-8). Accordingly, the Bank argues that there is no obligation on the Court to determine whether the attorneys' fees and costs in this case are reasonable. (Dkt. No. 105 at 20-21).

While the Mortgage contains no express "reasonableness" limit to attorneys' fees and costs, by its terms, the Mortgage is "governed by and construed in accordance with the laws of the United States Virgin Islands." (Dkt. No. 104-4 at 11). Under Virgin Islands law, attorneys' fees charged must be reasonable in order to be awarded, notwithstanding any contractual provision to the

contrary. In this regard, the Supreme Court of the Virgin Islands has held that "although a fee arrangement for legal services is a matter of contract between the client and the attorney, courts will enforce only reasonable attorneys' fees, even if the contract itself is otherwise enforceable." *Rainey v. Hermon*, 55 V.I. 875, 880-81 (2011); *see also Abramovitz v. Lynch*, 2007 WL 1959164, at *1 (D.V.I. June 26, 2007) (courts should not enforce contractual provisions that allow unreasonable attorneys' fees); *Yearwood Enterprises, Inc. v. Antilles Gas Corp.*, 2017 WL 6316625, at *3 n.21 (V.I. Super. Dec. 5, 2017) ("Regardless of whether the relief is awarded under V.I.R.Civ.P. 54 or 5 V.I.C. 541(b), the Court must consider whether the attorney's fees and costs are reasonable"). In addition, the Virgin Islands Rules of Professional Conduct forbid any attorney from making any agreement for or charging "unreasonable fee[s]" or expenses. V.I. Sup. Rule 211.1.5(a). Accordingly, the Court rejects the Bank's suggestion that there is no need to review the reasonableness of the attorneys' fees and costs requested.

Alternatively, the Bank asserts that its requested attorneys' fees and costs are commensurate with local billing rates for similar services in the community. *Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 180 (3d Cir. 2001). The Bank presents affidavits from two Virgin Islands attorneys—both with 30 years or more of private practice experience—who assert that the hourly rates for experienced attorneys on St. Croix for "commercial litigation including multi-party commercial foreclose actions" range from $300 to $450 per hour. (Dkt. No. 104-19, 104-20).

For an extended period of time, Virgin Islands courts—both local and federal—have determined that "a reasonable hourly rate in this jurisdiction spans from $125 to $300 per hour." *Williams v. Ranger American of V.I., Inc.*, 2017 WL 2543293 at *2 (D.V.I. June 12, 2017); *see also Canegata v. Schoenbohm*, 2016 WL 7239684 at *2 (V.I. Super. 2016) (allowing $300 per hours for experienced attorney). More recently, a local court has awarded attorneys' fees for

experienced attorneys at a higher rate. *See, e.g.*, *Roy v. Poleon*, 2018 WL 6721399, at *4 (V.I. Super. Dec. 14, 2018) (issuing an award using a $350 hourly rate for experienced counsel).

While the instant case involved a multi-parcel foreclosure, most of the legal work required in the case was similar to that performed in a typical residential or single lot foreclosure action. However, in addition to the multi-parcel nature of the case, there were a few complicated circumstances in this transaction not seen in the typical run-of-the mill foreclosure case—the number of lienholders, the tracing of transfers of junior liens, and the changes in the identities of various fiduciaries of lienholders. Thus, the Complaint had to be amended several times to ensure that all Trustees of the BVI Trust were included. In addition, the Trustee of the ERG Retirement Trust and Administrator of the Energy, Research and Generation Profit Sharing Plan changed. Finally, two men involved with Bay Estates and/or the BVI Trust were subject to criminal prosecution elsewhere resulting in another lien against the Property. In considering the circumstances of this particular case, the Court finds that an hourly rate of $350 per hour is reasonable for an experienced attorney such as Attorney Groner.

The second step of the attorneys' fees analysis is to evaluate the reasonableness of the time spent by counsel in this case. In evaluating the reasonableness of the hours expended, a court must examine contemporaneous time records that identify, for each attorney, the hours expended on a task, "'with a view to the value of the work product of the specific expenditures to the client's case.'" *Flagstar Bank, FSB v. Lawrence*, 2018 WL 4518695, at *2 (quoting *FTC v. Consumer Health Benefits Ass'n*, 2011 WL 5513182 (E.D.N.Y. Nov. 10, 2011)). Where the hours are excessive, redundant, or unnecessary, they are not "reasonably expended." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). "Excessiveness of time spent in light of an applicant's expertise is a legitimate reason for reducing a fee award." *Borrell*, 207 F. Supp. 3d at 514. In addition, the Court

must also consider, inter alia, the relative simplicity or complexity of the case and the quality of the counsel's moving papers. *Gillespie v. Dring*, 2019 WL 5260381, at *7 (M.D. Pa. 2019) (citing *Mantz v. Steven Singer Jewelers*, 100 F. App'x 78, 81 (3d Cir. 2004)).

As noted above, there were a few novel points in this case that would support the expenditure of more attorney time than in a run-of-the-mill foreclosure action. The attorneys' fees requested by the Bank, however, do not align with the fact that, despite these complications, they never became serious issues of contention because the case was largely uncontested.

A review of counsel's Declaration reflects excessive hours claimed. For example, counsel drafted four Complaints—the original and three amended complaints. However, each amended complaint changed only the caption to alter or drop parties and changed portions of a few paragraphs in a 12- to 14-page Complaint. The amount of time billed for the drafting and filing of the concise Motions to Amend and Memoranda in Support,[7] and to make the minor redlined changes in the proposed Amended Complaints—approximately 16.1 hours—is excessive for the minor changes actually made. (Dkt. Nos. 2-3, 56-57, 76-77).[8] In addition, the time spent drafting the Motions for Entry of Default for the Defendants served by publication, which were nearly

---

[7] Each Motion to Amend contained only one paragraph in addition to the caption and certificate of service, and the various Memoranda contained only five or six paragraphs. The Motions and Memoranda contained only minor variances among them.

[8] The actual amount of time devoted solely to drafting the original Complaint, the Motions to Amend, and the various Amended Complaints is difficult to ascertain precisely due to counsel's practice of "block-billing." The party seeking an award of attorneys' fees has the burden to prove that its request for fees is reasonable by presenting evidence establishing that the hours worked, and rates claimed are reasonable. *Rode v. Dellarciprete*, 892 F.3d 1177, 1183 (3d Cir. 1990) (quoting *Hensley*, 461 U.S. at 433). An attorney's records presented in support of a claim for attorneys' fees must be "sufficiently detailed to permit a conclusion about the reasonableness of the hours claimed." *NXIVM Corp. v. Sutton*, 2019 WL 4010859, at *14 (D.N.J. Aug. 26, 2019). The practice of "block billing" does not necessarily show the exact amount of time spent on the each of the various activities listed in the block, thus requiring the Court to decipher the charges in light of the work claimed. *Id.*

identical, does not support the apparent 7 hours billed for those services (Dkt. Nos. 85-88, 93-96). Similarly, the Motion for Default Judgment and Summary Judgment largely mirrors the Complaints, with the addition of the Affidavit of Indebtedness, citations to the record, and the Declaration for Attorneys' Fees and Costs. Thus, the Court concludes that the approximately 24 hours billed for these filings was excessive. Based on examples of this nature, together with counsel's experience and the degree of complexity of the case, the Court finds that counsel's bill for 75.45 hours is excessive and should be reduced by 30% to 52.82 hours. At a rate of $350 per hour, this results in an award for attorneys' fees of $18,487.00.

The Bank also requests reimbursement for its costs and expenses. In order for costs to be reimbursed, they must be reasonable. *See Creative Minds, LLC v. Reef Broadcasting, Inc.*, 2014 WL 4908588, at *1 (V.I. Super. Sept. 24, 2014). Similarly, in order to recover "expenses"—as permitted under the contract—they must also be reasonable. *See Rainey*, 55 V.I. at 880-81. Under Virgin Islands law, reasonable expenses related to title searches, filing and recording fees, and process server fees are appropriate expenses that may be recovered. *Matrix Financial Services Corp. v. Laurent*, 2016 WL 2757698, at *6. However, "overhead costs," such as postage and messenger fees, are not compensable. *See Creative Minds, LLC*, 2014 WL 4908588, at *1 (refusing reimbursement of postage and photocopying).

The Bank claims $4,098.69 in expenses. The Court notes, however, that the amount of $59.54 is related to postage costs, which is not reimbursable. *See id.* The remainder of the charges—for copies of OLG maps, process servers, filing fees for the case and for recording a lis pendens, publication costs for service, and expenses associated with service on the Trustees—are properly reimbursable. Consequently, the Bank is awarded $4,039.15 in costs and expenses.

# IV. CONCLUSION

For the foregoing reasons, the Bank's Motion for Default Judgment is granted against Bay Estates; Evelyn C. Hermsmeier, Eric B. Benson, Bradley D. Benson, and Mark Benson, as Co-Trustees of the Benson Virgin Islands Family Heritage Trust ("BVI Trust") and any Successor Trustees of the BVI Trust. Further, default judgment will be entered in the Bank's favor against Defendant Bay Estates in the amount of $809,617.26 in unpaid principal; unpaid accrued interest from June 1, 2014 through April 6, 2020, totaling $384,960.11, for a total indebtedness of $1,194,577.37.

In addition, the Bank's Motion for Summary Judgment is granted against junior lienholders Mary B. Wilson, Trustee of the Mary B. Wilson Living Trust; Arthur J. Faro; Eileen A. Cassidy; and Nicholas Saakvitne, Trustee, Independent Fiduciary and Plan Administrator of the ERG Retirement Trust and the Energy, Research and Generation Profit Sharing Plan.

Finally, the Bank's Motion for Attorneys' Fees and Expenses is granted, in part, for a total of $18,487.00 in attorneys' fees and $4,039.15 in costs and expenses, for a total of $22,526.15.

An appropriate Judgment and Order accompanies this Memorandum Opinion.

Date: April 6, 2020

_____/s/_____
WILMA A. LEWIS
Chief Judge